## TERMINATION AGREEMENT

This Termination Agreement ("Agreement") is entered into on this the 11th day of April 2017 by and between Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital, an Oklahoma public trust, and SysInformation Healthcare Services, LLC d/b/a EqualizeRCM Services ("EqualizeRCM"), a Texas Limited Liability Company. PVHA and EqualizeRCM are each a "Party" and are collectively referred to as the "Parties."

WHEREAS, on November 18, 2013 PVHA and EqualizeRCM entered into the EqualizeRCM Services Master Service Agreement, having an effective date of November 18, 2013 ("Services Agreement");

WHEREAS, pursuant to the Services Agreement, EqualizeRCM provided PVHA with those services set forth on the Schedule of Full Service Clients ("Service Schedule") and Schedule for Customized Practice Support Services, which are attached to the Services Agreement ("EqualizeRCM Services");

WHEREAS, in connection with the Services Agreement, PVHA and EqualizeRCM also entered into a Business Associate Agreement ("Associate Agreement"), dated November 18 2013 that addressed certain confidentiality obligations of the Parties;

WHEREAS, PVHA provided EqualizeRCM with notice PVHA of their intent to not renew the contract and to employ a new vendor for the same services and requests EqualizeRCM's assistance with the transition to a new vendor;

WHEREAS, EqualizeRCM asserts that PVHA breached the Services Agreement in failing to timely pay amounts due and owing and in prematurely engaging its new vendor in violation of the Services Agreement provisions designating EqualizeRCM as the exclusive provider of billing and collections services;

{01355/0011/0019627/6.5}

**EXHIBIT "1"**

WHEREAS, in an effort to amicably resolve any and all disputes, the Parties have reached a mutual agreement concerning the termination of the Services Agreement and the Associate Agreement on the terms described below;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, PVHA and EqualizeRCM agree as follows:

1. **Termination of Services Agreement and Associate Agreement.** Subject to the terms and conditions of this Agreement, effective November 18, 2016 ("Termination Date"), the Services Agreement (including all schedules) and any Associate Agreement, are terminated without any further action on the part of either EqualizeRCM or PVHA, and except as provided herein, the terms and provisions thereof terminated on the Termination Date and are of no further force and effect. For purposes of clarification, only the following provisions shall survive termination:

   (1) Section 2(d) of the Services Agreement (Taxes); 3(d), (e), (f), and (g) of the Services Agreement (Security and Access to Books and Records); Section 9 of the Services Agreement (Error Correction) Section 10 of the Services Agreement (Warranty Limitations); Section 11 of the Services Agreement (Limitation of Liability); Section 12 of the Services Agreement (Indemnification); Section 13 of the Services Agreement (Nonsolicitation of Employees); and Sections 4 and 9.4 of the Associate Agreement shall remain in effect;

2. **Payment by PVHA.** As of January 31, 2017, PVHA owed to EqualizeRCM and has agreed to pay EqualizeRCM $336,145.91 ("Indebtedness"), which reflects a payment of $2,000 received by EqualizeRCM from PVHA on November 14, 2016. Included in the Indebtedness is the $243,875.34 outstanding under the Services Agreement (invoices through

September 30, 2016) plus $64,270.57 for the EqualizeRCM Services for the period from October 1 through November 17, 2016 (termination date of the MSA) and interest and late fees through January 31, 2017. In addition, included in the indebtedness is a $30,000 agreed termination payment that PVHA agrees to pay EqualizeRCM in exchange for EqualizeRCM permitting the early termination of the Services Agreement and for having agreed to provide Transition Services. PVHA also agrees to pay EqualizeRCM $8,140 for legal fees and collection costs incurred by EqualizeRCM and which is recoverable by EqualizeRCM pursuant to Section 2(b) of the Services Agreement as well as accrued interest for February and March 2017 in the amount of $10,144.18. The Indebtedness, the legal fees, and the February and March accrued interest shall be paid according to the terms of a Promissory Note entered into by PVHA as borrower, and EqualizeRCM as lender, a copy of which is provided with this Agreement ("Promissory Note").

3. **Required Payback Amounts.** PVHA is participating in the Upper Payment Limit ("UPL") government program and anticipates that it will receive payments from the UPL program ("UPL Funds") during the term of the Promissory Note. All parties agree that time is of the essence in repaying the Promissory Note. As soon as UPL Funds are received by PVHA, PVHA will immediately notify EqualizerRCM in writing of the amount received from the UPL program and within 15 days pay the lesser of: (1) 50% of the amount received from the UPL program or (2) the amount necessary to pay off the entire balance owed under the Promissory Note. Further, by no later than the fifth day of each month, PVHA shall provide a written report to EqualizeRCM setting forth the amount of UPL Funds received by PVHA during the preceding month. In addition to that payback obligation, PVHA is also contracting to perform and/or bill certain lab tests through the hospital, which will enable PVHA to collect significant incremental

funds ("Lab Test Funds"). As soon as Lab Test Funds are received by PVHA, PVHA will immediately notify EqualizerRCM in writing of the amount received from the Lab Test Funds and within 15 days pay the lesser of: (1) 50% of the amount received from the Lab Test Funds or (2) the amount necessary to pay off the entire balance owed under the Promissory Note. Further, by no later than the fifth day of each month, PVHA shall provide a report to EqualizeRCM setting forth the amount of Lab Test Funds received by PVHA during the preceding month. The payback obligations set forth above with respect to the UPL Funds and the Lab Tests Funds shall be referred to herein and in the Promissory Note as the "Required Payback Amounts." Any failure to pay such Required Payback Amounts, either from UPL Funds or the Lab Tests Funds within the 15 day period, or any failure to provide the monthly reports set forth above will be a default under the Promissory Note and Security Agreement. In addition, to the extent any person, business entity, or government agency asserts any claim for recovery, repayment, or recoupment of any UPL Funds or Lab Test Funds paid by PVHA to EqualizeRCM hereunder due to any action of PVHA or due to a mistake or error in paying such funds to PVHA, PVHA agrees to indemnify EqualizeRCM for any such amounts EqualizeRCM may be required to pay to such person, business entity, or government agency as well as pay any legal expenses or costs, including attorneys' fees, incurred by EqualizeRCM in connection with such claim.

4. **Mutual Release of Claims.** Save and except for PVHA's payment obligations set forth above and in the Promissory Note and any counterclaim PVHA may assert in defense of any claim asserted by EqualizeRCM, each Party and its respective representatives, parents, affiliates, subsidiaries, successors, assigns, attorneys, agents, and employees, hereby releases and discharges the other Party hereto and its officers, directors, shareholders, owners, representatives, parents, affiliates, subsidiaries, successors, assigns, attorneys, agents, and employees

("Releasees") from any and all claims, debts, liabilities, demands, costs, obligations, expenses, accounts, actions, damages, losses, causes of action, and liabilities of any kind (upon any legal or equitable theory, whether contractual, common law, statutory, federal, state, local or otherwise, and including, but not limited to, claims for fees, costs and disbursements of any kind), whether known or unknown, accrued or unaccrued, in scope or out of scope, direct or indirect, past, present, or future, which each Party now has, ever had, or may have in the future against the other Party related to, arising from, or in any way concerning the Services Agreement; the Associate Agreement; the EqualizeRCM Services; the scope of work under the Services Agreement; any actions of EqualizeRCM; and any claims or causes of action arising under HIPPA or any other federal, state, or local statute, ordinance, or regulation. Nothing herein does or is intended to waive and release any right to payment EqualizeRCM has under Section 2 above and under the Promissory Note. In addition, nothing herein does or is intended to waive and release any counterclaim PVHA may assert in response to any claim or cause of action initiated by EqualizeRCM; however, PVHA agrees it will not bring any affirmative claims against EqualizeRCM and that PVHA is only preserving its right to assert counterclaims in the event EqualizeRCM initiates litigation against PVHA.

5. **No Claims or Causes of Action.** Each Party hereby agrees to refrain from directly or indirectly asserting any claim or demand or commencing (or causing to be commenced) any suit, action or proceeding of any kind, in any court, arbitration proceeding, or before any tribunal, against the other Party and/or its Releasees based upon or arising out of any released claim. Nothing in this Agreement shall preclude or restrict the right or ability of the Parties to enforce performance under this Agreement, including PVHA's payment obligations under Section 2 above and under the Promissory Note.

6. **Representation by the Parties.** By their execution hereof, the Parties represent, covenant, and warrant that no claims released herein, if any such claims exist, have previously been conveyed, assigned, or in any manner transferred, in whole or in part, to any third party. The Parties expressly represent, covenant, and warrant that they have full authority to release any and all of the claims released herein. In addition, each Party represents and warrants that it has not filed any lawsuits, arbitration proceedings, charges, complaints, petitions, or accusatory pleadings against the other Party or any entity or person released herein, based upon, arising out of or related in any way to the Services Agreement; the Associate Agreement; the EqualizeRCM Services; the scope of work under the Services Agreement; any actions of EqualizeRCM; or any claims or causes of action arising under HIPPA or any other federal, state, or local statute, ordinance, or regulation.

7. **Transition Services.** After November 17, 2016, EqualizeRCM's account manager may have previously answered or may answer questions of PVHA or its new services vendor depending on their own availability and in their own discretion, but EqualizeRCM owed and owes no further obligations whatsoever under the Services Agreement, the Associate Agreement or otherwise after November 17, 2016. PVHA agrees that EqualizeRCM had no further liability and will have no further liability following the Termination Date, including but not limited to any liability arising out its transfer/transition of responsibilities to PVHA's new services vendor as provided herein, and PVHA agrees that it shall have no right to assert any claims or causes of action of any nature whatsoever against EqualizeRCM arising out of such transfer/transition of responsibilities to PVHA's new services vendor and EqualizeRCM's efforts in connection with such transfer/transition.

8. **Non-Disparagement.** The Parties agree not to make critical, negative, or disparaging remarks, including any statements or remarks that may be considered critical, negative, or disparaging, to any person or entity about the other Party hereto or its parent company, subsidiaries, affiliates, officers, directors, board members, managers, investors, agents, employees, representatives, predecessors, successors, and assigns, including but not limited to critical or disparaging comments concerning the quality of the other Party's services or its business practices.

9. **Confidentiality.** Subject to the Oklahoma Open Meetings Act and Open Records Act, the Parties agree to keep the existence of, substance, terms, and conditions of this Agreement strictly confidential, unless otherwise compelled by law to disclose the terms. The Parties may disclose the terms of this Agreement only to their respective financial advisors, accountant/tax advisors, and attorneys, and in so doing the Parties will instruct each such person that this Agreement and its terms must be kept strictly confidential, subject to the Oklahoma Open Meetings Act and Open Records Act.

10. **Entire Agreement.** This Agreement and the accompanying Promissory Note and Security Agreement constitutes the full and complete agreement of the Parties with respect to the subject matter hereof, including the termination of the Services Agreement and the Associate Agreement. This Agreement may be amended only by written instrument signed by the Parties.

11. **Counterparts.** This Agreement may be executed in counterparts, all of which together for all purposes constitute one agreement binding on all parties.

12. **Governing Law and Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma and the United States. Any action related to or to enforce any provisions of this Agreement shall be brought only in the state or federal

courts sitting in or having jurisdiction over Garvin County, Oklahoma. The language of this Agreement shall be construed as a whole, according to its fair meaning, and shall not be construed strictly for or against either of the parties.

13. **Attorneys' Fees.** In the event of a breach of this Agreement by PVHA or EqualizeRCM, including but not limited to by failing to pay the amounts set forth in Section 2 above in accordance with the terms of the Promissory Note, the non-breaching party shall be entitled to recover its reasonable attorneys' fees, expenses, and costs incurred in enforcing this Agreement, whether such amounts are incurred before litigation, during litigation, or at the appellate level.

14. **Severability.** In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement or any such other instrument.

15. **Binding Effect.** All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the Parties and their respective administrators, successors, and assigns.

16. **Signature and Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original and both of which together shall be deemed one and the same instrument. Facsimile copies and electronic transmissions of signatures shall be deemed to be original signatures for all purposes.

Dated: ~~March~~ <ins>April</ins>_____, 2017.

_/s/ Gary Alfred_____
Name: Gary Alfred
Title: Chairman

**Pauls Valley Hospital Authority**

_____

Name: Michael A. Hill
Title: President
**SysInformation Healthcare Services, LLC
d/b/a EqualizeRCM Services**

Dated: April 11, 2017.

_____
Name: _____
Title: _____

**Pauls Valley Hospital Authority**

*/s/ Michael A. Hill*
_____

Name: Michael A. Hill
Title: President
**SysInformation Healthcare Services, LLC
d/b/a EqualizeRCM Services**