**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

SYSINFORMATION HEALTHCARE
SERVICES, LLC d/b/a EQUALIZERCM
SERVICES

        Plaintiff,

vs.

PAULS VALLEY HOSPITAL
AUTHORITY d/b/a PAULS VALLEY
GENERAL HOSPITAL

        Defendant.
_____/

CASE NO. CIV-18-00152-SLP

**SYSINFORMATION HEALTHCARE SERVICES, LLC'S MOTION TO DISMISS**
**FIRST AMENDED COUNTERCLAIM AND BRIEF IN SUPPORT**

Plaintiff, SYSINFORMATION HEALTHCARE SERVICES, LLC d/b/a EQUALIZERCM SERVICES ("SysInformation"), moves this Court, pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the *First Amended Counterclaim* (the "Amended Counterclaim") [ECF No. 39], filed by defendant Pauls Valley Hospital Authority ("Pauls Valley"), and in support states:

**RELEVANT BACKGROUND**

1.     **Termination Agreement.**    On or about November 18, 2013, SysInformation and Pauls Valley entered into a series of agreements, including the EqualizeRCM Services Master Service Agreement (the "Master Service Agreement") and

1

the Business Associate Agreement (the "Associate Agreement") (collectively, the "Services Agreements").

2. In or around late 2016, Pauls Valley breached the Master Service Agreement by failing to timely pay the amounts due thereunder and by prematurely engaging a new vendor in violation of the Master Service Agreement provisions designating SysInformation as the exclusive billing and collections servicer.

3. Following the breach, SysInformation and Pauls Valley were able to consensually resolve their dispute, and on April 11, 2017, SysInformation and Pauls Valley entered the Termination Agreement (the "Termination Agreement"), which terminated the Services Agreements effective November 18, 2016.  Termination Agreement at ¶ 1.  Pursuant to the Termination Agreement, Pauls Valley admitted that it owed $336,145.91 to SysInformation under the Master Service Agreement and agreed to pay SysInformation the outstanding $336,145.91 (the "Indebtedness").  Termination Agreement at ¶ 2.

4. The Termination Agreement also included a mutual general release between the parties, which states:

> **Mutual Release of Claims.**  Save and except for PVHA's payment obligations set forth above and in the Promissory Note and any counterclaim PVHA may assert in defense of any claim asserted by EqualizeRCM, each Party and its respective representations, parents, affiliates, subsidiaries, successors, assigns attorneys, agents, and employees, hereby releases and discharges the other Party hereto and its officers, directors, shareholders, owners, representatives, parents, affiliates, subsidiaries, successors, assigns, attorneys, agents and employees ("Releasees") from any and all claims, debts, liabilities, demands, costs, obligations, expenses, accounts, actions, damages, losses, causes of action,

and liabilities of any kind (upon any legal or equitable theory, whether contractual, common law, statutory, federal, state, local or otherwise, and including, but not limited to, claims for fees, costs and disbursements of any kind), whether known or unknown, accrued or unaccrued, in scope or out of scope, direct or indirect, past, present, or future, which each Party now has, ever had, or may have in the future against the other Party related to, arising from, or in any way concerning the Services Agreement; the Associate Agreement; the EqualizeRCM Services; the scope of work under the Services Agreement; any actions of EqualizeRCM; and any claims or causes of action arising under HIPPA or any other federal, state, or local statute, ordinance, or regulation.  Nothing herein does or is intended to waive and release any right to payment EqualizeRCM has under Section 2 above and under the Promissory Note.  In addition, nothing herein does or is intended to waive and release any counterclaim PVHA may assert in response to any claim or cause of action initiated by EqualizeRCM; however, PVHA agrees it will not bring any affirmative claims against EqualizeRCM and that PVHA is only preserving its right to assert counterclaims in the event EqualizeRCM initiates litigation against PVHA.

5. On April 11, 2017, SysInformation and Pauls Valley memorialized the indebtedness owed under the Termination Agreement and entered into that certain agreement entitled Promissory Note (the "<u>Promissory Note</u>") in the principal amount of $336,145.91.

6. **<u>The Complaint.</u>**  On February 15, 2018, SysInformation filed the Complaint, which was amended on May 2, 2018, with the filing of the Amended Complaint, which seeks damages against Pauls Valley due to its breaches under the Promissory Note and Termination Agreement.

7. On May 14, 2018, Pauls Valley filed its *Answer to Amended Complaint and Counterclaim* (the "<u>Initial Counterclaim</u>") [ECF No. 23].  The Initial Counterclaim filed by Pauls Valley sought damages stemming from an alleged breach of the Master Service

Agreement, even though such agreement was previously terminated and all claims related thereto were settled and released under the Termination Agreement.

8. On December 21, 2018, Pauls Valley filed the Amended Counterclaim. The Amended Counterclaim, in addition to its unchanged breach of contract count, bizarrely asserts a claim for negligence against SysInformation based on the same set of facts alleged in the claim for breach of the Master Service Agreement. Additionally, the Amended Counterclaim seeks a declaratory judgment from the Court declaring the security interest of SysInformation to have been released due to the choice of SysInformation to not foreclose on its security interest.

## ANALYSIS

### A. Standard on a Motion to Dismiss

9. "Rule 12(b)(6) authorizes the Court to dismiss any claim made by Plaintiffs where it appears beyond doubt that the claim is legally insufficient to support a finding of liability." *Maul v. Logan County Bd. of Comm'rs*, 2005 WL 3434691 at *1 (W.D. Okla. Dec. 14, 2005). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is "properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief." *Quarles v. U.S. ex. rel Bureau of Indian Affairs*, 2006 WL 346430 at *1 (N.D. Okla. Feb. 13, 2006), citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207 (10th Cir. 2005).

10. When analyzing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and "construe the facts in the light most favorable

to the nonmoving party." *Quarles*, 2006 WL 346430 at *1. "Conclusory allegations unsupported by factual averments within the complaint will not save an otherwise insufficient claim from dismissal." *Maul*, 2005 WL 3434691 at *1, citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

11. To avoid dismissal pursuant to a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)); *Genesee County Employees Ret. Sys. v. Thornburg Mortgage Sec.*, 825 F.Supp.2d 1082, 1121 (D.N.M. 2011); *Begay v. Pub. Serv. Co. of New Mexico*, 710 F.Supp.2d 1161, 1181 (D.N.M. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[F]ormulaic recitations of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Some allegations may be so indeterminate that they require "further factual enhancement" to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

12. Because the Court accepts all factual allegations as true, a plaintiff (or counterclaiming defendant) may plead himself into an order granting dismissal of the complaint by pleading facts that are inconsistent with his claim for relief. *E.g.*, *Browning*

1758428v1 999113.0002

*v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) ("Rule 12(b)(6)dismissal is appropriate where the allegations contradict the claim asserted, e.g., where the allegations in an action for negligence showed that the plaintiff's own negligence was the sole proximate cause of the injury.") (internal citation omitted); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612-613 (6th Cir. 2009) (dismissing complaint in a trademark infringement case where the plaintiff pled facts demonstrating that the defendant's use of the name was merely descriptive, and not infringing).

    **B. Pauls Valley's failure to attach the Master Service Agreement, set forth specific allegations about its terms, or sufficiently allege a breach thereunder, is fatal to its claim for breach of contract.**

    13.    Pauls Valley's claim that SysInformation breached the Master Service Agreement fails because it has not described with specificity the Master Service Agreement's terms, the alleged breach or attached the contract at issue. First, the Amended Counterclaim fails to state a plausible breach of contract claim because Pauls Valley neither attached the relevant contract nor described its terms with required specificity. Instead, Pauls Valley generically alleges that "plaintiff was obligated to provide certain services to defendant, including the processing of claims with health insurers, Medicare, Medicaid, and other third-party payers and other actions needed to collect defendant's accounts receivable." Amended Counterclaim at ¶ 2. Pauls Valley does not include any specific language form the Master Service Agreement nor does it attach the Master Service Agreement to the Amended Counterclaim. *See, e.g., Guajardo v. JP Morgan Chase Bank, N.A.*, 605 Fed. Appx. 240, 244 (5th Cir. 2015) (upholding trial

court's dismissal of breach of contract claim pursuant to Rule 12(b)(6) where plaintiff alleged that defendant breached "unspecified contract provisions" and failed to identify specific actions constituting breach); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D. N.Y. 2011) (dismissing complaint where plaintiffs failed to "set forth with specificity the essential terms of the contract" they alleged were breached).

14. Second, the Amended Counterclaim similarly fails to sufficiently and properly allege a breach. All that is alleged in regards to a breach, are vague statements that SysInformation breached the Master Service Agreement by:

   a. allowing time limits for filing claims to pass without having properly filed claims with third party payers.

   b. improper posting of payments.

   c. failure to adjust accounts as required by applicable regulations and/or contracts with third-party payers.

   d. failure to identify, process and refile claims which were rejected for insufficient information and other problems that could have been cured.

   e. Failure to identify and attempt to collect remaining account balances after all funds due from third party payers have been collected.

Amended Counterclaim at ¶ 3.

15. There are no allegations of when, how, or under what circumstances the alleged breaches occurred. These allegations fall far short of providing SysInformation with fair notice of Pauls Valley's claim and the grounds upon which it rests, and lack sufficient specificity to enable SysInformation to prepare responsive pleadings and defenses. *Twombly*, 550 U.S. at 593 n. 12.

16.     Accordingly, the counterclaim for breach of contract must be dismissed.

**C. Pauls Valley released all claims related to the Master Services Agreement under the Termination Agreement.**

17.     "[R]elease provisions are contractual, and the language of a contract (release) is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity." *Kay Pharmacal Co. v. Dalious Const. Co.,* 276 P.2d 756, 758 (Okla. 1954).  Contractual interpretation seeks to identify the mutual intent of the parties at the time of contracting. Okla. Stat. 15, § 152. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Okla. Stat. 15, § 157. Words of a contract are to be understood in their ordinary and popular sense, unless another meaning is clearly indicated. Okla. Stat. 15, § 160.

18.     The Oklahoma Supreme Court has held that "[a] release is a contract," and [i]f the language of a contract is clear and without ambiguity, the Court is to interpret it as a matter of law." *Corbett v. Combined Commc'n Corp. of Okla., Inc.*, 654 P.2d 616 (Okla. 1982).  "In determining the intention of the parties, the express language of the contract controls if it is unambiguous on the face and there exists no fraud, accident, or pure absurdity." Okla. Stat. 15, § 154; *Devine v. Ladd Petroleum Corp.*, 743 F.2d 745, 748 (10th Cir. 1984).  If a contract is written, "the intention of the parties must be determined from the writing alone, if possible." *Devine*, 743 F.2d at 748, *citing* Okla. Stat. 15, § 155.

19. Here, SysInformation and Pauls Valley agreed to a broad general release in the Termination Agreement. The operative language of the release provides that the parties release each other:

> from any and all claims, debts, liabilities, demands, costs, obligations, expenses, accounts, actions, damages, losses, causes of action, and liabilities of any kind (upon any legal or equitable theory, whether contractual, common law, statutory, federal, state, local or otherwise, and including, but not limited to, claims for fees, costs and disbursements of any kind), whether known or unknown, accrued or unaccrued, in scope or out of scope, direct or indirect, past, present, or future, which each Party now has, ever had, or may have in the future against the other Party related to, arising from, or in any way concerning the Services Agreement…

Termination Agreement at ¶ 4.

20. Thus, the language and intention of the parties was clear, the Termination Agreement was intended to settle any and all claims stemming from the Master Services Agreement, including any breaches thereunder.

21. Nonetheless, Pauls Valley has asserted a claim against SysInformation in violation of the release provisions of the Termination Agreement and which it previously settled and released. Pauls Valley asserts that it is somehow able to bring this claim because "defendant reserved its right to assert its claims against the plaintiff." Amended Counterclaim at ¶ 5. However, this interpretation attempts to twist the plain meaning of the Termination Agreement and the intention of the parties, which was clearly to resolve any and all disputes.

22. Consistent with Oklahoma law, SysInformation urges the court to review the Termination Agreement executed by the parties, find that it is unambiguous, and to

determine that Pauls Valley is barred from bringing any claims related to the Master Services Agreement, including the counterclaims for negligence and breach of contract.

23. Accordingly, Count I of the Amended Counterclaim must be dismissed.

**D. Pauls Valley's claim for negligence fails to state a claim and must be dismissed.**

24. "The elements of a claim for negligence are: 1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Berman v. Laboratory Corp. of America,* 268 P.3d 68, 72 (Okla. 2011). Here, Pauls Valley fails to sufficiently allege a single fact supporting any of the elements necessary to establish entitlement to relief under a negligence theory. Specifically, there is a complete absence of any allegations that SysInformation owed a duty to Pauls Valley, that SysInformation breached a duty owed to Pauls Valley or that Pauls Valley suffered damages as a result of SysInformation's actions.

25. Accordingly, the counterclaim for negligence must be dismissed.

**E. Count II seeking declaratory judgment fails to state a cause of action and must be dismissed.**

26. The Declaratory Judgment Act states in pertinent part that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

27. Thus, in order to obtain relief under the Declaratory Judgment Act, 28 U.S.C.A. § 2201, an "actual controversy" is required. *Dawson v. Dept. of Transp.*, 480 F.Supp. 351, 352 (W.D. Okla. 1979).

28. The standard for assessing an actual controversy in a federal declaratory judgment action is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *see also Allendale Mut. Ins. Co. v. Kaiser Engineers, Div. of Henry J. Kaiser Co.*, 804 F.2d 592, 594 (10th Cir. 1986).

29. Here, Pauls Valley attempts create a controversy where none exists. The crux of Pauls Valley's count for declaratory relief is that SysInformation somehow owes a duty to Pauls Valley to release its lien, and an alleged failure by SysInformation to release its lien on the property of Pauls Valley creates an actual controversy that should be determined by this Court. This is simply not true. SysInformation has no duty to release its security interest in the assets of Pauls Valley. In fact, the law is clear that SysInformation may elect to proceed under a claim for breach of the Promissory Note ad Termination Agreement, without waiver of any other rights or remedies.

30. Article 9 of the Uniform Commercial Code provides:

(a) After default, a secured party has the rights provided in this part and, except as otherwise provided in Section 1-9-602 of this title, those provided by agreement of the parties. A secured party:

>  (1) may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure

Okla. Stat. 12A, § 1-9-601(a)(1).

31. Additionally, Section 9-601(c) provides that these remedies "are cumulative and may be exercised simultaneously." Okla. Stat. 12A, § 1-9-601(c).

32. Thus, a secured party may pursue any and all remedies against a debtor until the debt is satisfied, without danger that the actions will constitute an irrevocable election of remedies. *Farmers State Bank in Afton v. Ballew*, 626 P.2d 337, 340 (Okla. Ct. App. 1981). *See also O'Dell v. Kunkel's Inc.*, 581 P.2d 878, 881 (Okla. 1978).

33. Other jurisdictions have similarly found that secured creditors may pursue any and all remedies against a debtor until the debt is satisfied without danger of any of his actions constituting an irrevocable election of remedies. *See McCullough v. Mobileland, Inc.*, 228 S.E.2d 146, 148 (Ga. Ct. App. 1976); *Michigan Nat'l Bank v. Marston*, 185 N.W.2d 47, 50 (Mich. Ct. App. 1970); *Ruidosa State Bank v. Garcia*, 587 P.2d 435, 436-37 (N.M. 1978); *Food City, Inc. v. Fleming Cos.*, 590 S.W.2d 754, 759 (Tex. Civ. App. 1979); *Kennedy v. Bank of Ephraim*, 594 P.2d 881, 884 (Utah 1979); *Peoples Nat'l Bank v. Peterson*, 498 P.2d 884, 885-6 (Wash. Ct. App. 1972).

34. Therefore, under Section 9-601, SysInformation has the right to exercise its remedies against Pauls Valley in a cumulative fashion, and this action to collect damages for Pauls Valley's breach under the Promissory Note and Termination Agreement does not restrict of limit its right to enforce its lien rights.

35. Accordingly, there is no actual controversy between the parties as Pauls Valley has no duty to release its lien on the property of Pauls Valley.

WHEREFORE, Plaintiff, SYSINFORMATION HEALTHCARE SERVICES, LLC d/b/a EQUALIZERCM SERVICES, respectfully requests that the Court dismiss the Amended Counterclaim.

Dated this 4th day of January, 2019.            Respectfully submitted,

**Derryberry & Naifeh, LLP**
*Co-Counsel for SysInformation Healthcare Services, LLC*
4800 N. Lincoln Blvd.
Oklahoma City, OK 73102
Telephone: (405) 528-6569
Fax: (405) 528-6462

By:   s/Jerome S. Sepkowitz
        Jerome S. Sepkowitz, OBA #8081
        jsepkowitz@derryberrylaw.com

-and-

**TRIPP SCOTT, P.A.**
*Co-Counsel for SysInformation Healthcare Services, LLC*
110 S.E. Sixth Street
Fifteenth Floor
Fort Lauderdale, Florida 33301
Tel.:   (954) 525-7500
Fax:   (954) 761-8475

By:  /s/ *Charles M. Tatelbaum*
        Charles M. Tatelbaum, Esq.
        Florida Bar No. 177540
        E-Mail: cmt@trippscott.com
        Jesse R. Cloyd, Esq.
        Florida Bar No. 58388
        Email: jrc@trippscott.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 4, 2019, a copy of the foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest entitled to notice.

                                                        s/Jerome S. Sepkowitz