IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SYSINFORMATION HEALTHCARE
SERVICES, LLC d/b/a EQUALIZER CM
SERVICES,

    Plaintiff,

v.

PAULS VALLEY HOSPITAL AUTHORITY d/b/a
PAULS VALLEY GENERAL HOSPITAL

    Defendant.

Case No. CIV -18-152-SLP

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

## 1. Introduction

Defendant's original Counterclaim (Doc. 23) was met with plaintiff's original Motion to Dismiss Counterclaim (Doc. 25), which was met with Defendants Response to Plaintiff's Motion to Dismiss Counterclaim (Doc. 36).

However, before any ruling on the plaintiff's original Motion to Dismiss Counterclaim (Doc. 25), defendant's original Counterclaim (Doc. 23) was superseded by defendant's First Amended Counterclaim (Doc. 39). The only substantive change between the original Counterclaim (Doc. 23) and the First Amended Counterclaim (Doc. 39) was the addition of Count 2: Determination of Security Interest.[1]

---

[1] Count 2 is the subject of this pending motion: Defendant's Motion for Partial Summary on Count 2 of the First Amended Counterclaim (Doc. 42).

Because of the filing of the First Amended Counterclaim (Doc. 39), the Court denied as moot the plaintiff's original Motion to Dismiss Counterclaim (Doc. 25). See Order (Doc. 40). Plaintiff then filed its Motion to Dismiss First Amended Counterclaim (Doc. 41), which makes (with regard to what is now Count 1 of the First Amended Counterclaim (Doc. 39)) the same arguments as the plaintiff made in its original Motion to Dismiss Counterclaim (Doc. 25), but makes additional arguments in ¶¶ 24-35.

Thus, the arguments and authorities below relating to ¶¶ 1-23 of Motion to Dismiss First Amended Counterclaim (Doc. 41) are the same as those set forth in Defendants Response to Plaintiff's Motion to Dismiss Counterclaim (Doc. 36). However, additional arguments and authorities are set forth below in response to ¶¶ 24-35.

## 2. Applicable Standards

Once again, this Court is faced with a motion to dismiss based upon *Twombly* and *Iqbal*. As a judge of this Court has noted:

> The Supreme Court's recent rulings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, – ––U.S. –––– 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009), have undoubtedly altered the landscape of pleading. However, the extent of this change has led to a rash of challenges by defendants who now routinely argue a plaintiff has failed to plead sufficient facts. Most of these motions lack merit and reflect either a fundamental misunderstanding of the applicable law or a desire to simply generate additional paperwork for the parties and the Court. * * * A motion to dismiss is not the proper vehicle for a factual challenge and nothing in the Supreme Court's decision suggests otherwise.

*Peralta v. Church Mut. Ins. Co.*, 2010 WL 2471675, at *1 (W.D. Okla. June 6, 2010) (Cauthron, J.). Although in this case, it is the plaintiff which has filed an *Iqbal*/*Twombly* motion against the defendant's counterclaim.

In addition, this Court has recognized that many of these motions greatly exaggerate the impact of *Twombly* and *Iqbal*:

> Defendant's argument suffers from the same malady as many 12(b)(6) motions since *Twombly*. Under Defendant's view, Plaintiff must plead specific facts and offer great detail before the Complaint is sufficient. Of course, this heightened pleading was specifically rejected by the Supreme Court. *Twombly*, 550 U.S. at 569, n. 14. Rather, as the Tenth Circuit has held, the requirement of plausibility was intended "to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F .3d 1242, 1248 (10th Cir. 2008). The degree of specificity required, of course, varies with the context and the type of case. *Id.* It must also necessarily depend on the availability of the information available to Plaintiff. Here, much of the information Defendant argues is missing is solely within the control of Defendant. Nothing in current pleading law allows a defendant to obtain dismissal of an action based on the failure to plead unavailable facts.

*Dowuona-Hammond v. Integris Health*, 2011 WL 134923, at *2 (W.D.Okla. 2011) (Cauthron, J.). And:

> Plaintiffs often are forced to plead generalities because of lack of information and/or because necessary information is in the possession of defendants and cannot be obtained prior to discovery. *Thus*, the standards for pleading a claim are necessarily liberal. What is primary is that the complaint "show[ ] that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

*Schlottman v. Unit Drilling Co., LLC*, 2009 WL 1764855, at *1 (W.D.Okla.) (Cauthron, J.) (denying a motion to dismiss "although [the allegations are] very basic"). And:

> [A] complaint need not contain "heightened fact pleading of specifics," 550 U.S. at 570, or "detailed factual allegations," *Id.* at 555 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

*Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 2012 WL 12863013, at *1 (W.D.Okla., October 10, 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (West, J).

And finally, this Court has recognized that whenever "The allegations made by Plaintiff, if proven, could establish the right to [the requested relief, the plaintiff] has nudged her claim across the line from conceivable to plausible." *White v. City of Blackwell*, 2013 WL 4520528, at *2 (W.D.Okla. August 26, 2013) (Cauthron, J.).

The Tenth Circuit has also recognized that *Twombly* is not nearly as far-reaching as alleged by many:

> "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 1965 n. 3. *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S.Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

### 3. The Counterclaim is Sufficient

The plaintiff claims that defendant "Pauls Valley's claim that SysInformation breached the Master Service Agreement fails because it has not described with specificity the Master Service Agreement's terms, the alleged breach or attached the contract at issue." Plaintiff's Motion to Dismiss (Doc. 25), ¶ 12. However, under *Iqbal* and

*Twombly*, neither is required. All that is required by "the Twombly/Iqbal standard [is] that a [claimant] should have at least **some relevant information** to make the claims plausible on their face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir.2012) (emphasis added).

Another judge of this Court has held that a claimant must "identify or describe their [contracts] ... or attach copies thereof and describe the . . . terms there[in] so as to raise the existence of [a contract]." *Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1257 (W.D. Okla. 2012) (West, J.). In that case, a breach-of-contract claim was dismissed because the plaintiff referred generally to multiple, unspecified oil and gas leases and then, instead of relying on the terms of the leases, alleged breach of "implied covenants."

However, in this case, the defendant has identified the pertinent contract (the Master Service Agreement ("MSA") dated November 18, 2013). Counterclaim (Doc. 23, ¶ 1). Furthermore, the defendant described the contract and its terms which "obligated [plaintiff] to provide certain services to defendant, including the processing claims with health insurers, Medicare, Medicaid, and other third-party payers and other actions needed to collect defendant's accounts receivable." The defendant then specifically set forth examples of breaches by the plaintiff:

> 3. Plaintiff breached the MSA by failing to adequately perform its obligations under the MSA. Plaintiff's breaches included:
>    a. Allowing time limits for filing claims to pass without having properly filed claims with third-party payers.
>    b. Improper posting of payments.

    c. Failure to adjust accounts as required by applicable regulations and/or contracts with third-party payers.

    d. Failure to identify, process and refile claims which were rejected for insufficient information and other problems that could have been cured.

    e. Failure to identify and attempt to collect remaining account balances after all funds due from third-party payers have been collected.

Counterclaim (Doc. 23), ¶ 3. Thus, the defendant has described the contract and identified some specific breaches of the contract, and has therefore sufficiently stated a counterclaim against the plaintiff.

In this case, the plaintiff was the manager of defendant's hospital. This means that the plaintiff was operating the defendant's hospital and was in control of defendant's books and records, and defendant is still learning of things that the plaintiff did and did not do. Of course, the defendant needs to conduct discovery in order to identify all of the plaintiff's breaches. As Judge Cauthron has noted (and as is quoted on p. 2 of this brief), claimants "often are forced to plead generalities because of lack of information and/or because necessary information is in the possession of [the opposing party] and cannot be obtained prior to discovery. Thus, the standards for pleading a claim are necessarily liberal." *Schlottman v. Unit Drilling Co.*, LLC, 2009 WL 1764855, at *1 (W.D.Okla.) (Cauthron, J.) (denying a motion to dismiss "although [the allegations are] very basic").

### 4. The Counterclaim Has Not Been Released

The plaintiff's argument and selective quoting of the Termination Agreement (Doc. 22-1) is disingenuous at best. What is conspicuously absent from the release language quoted by the plaintiff is this is critical exception: "***Save and except for***

PVHA's payment obligations set forth above and in the Promissory Note and ***any counterclaim [defendant] PVHA may assert*** in defense of any claim asserted by Equalize RCM, each party releases and discharges the other party. . . ." Termination Agreement (Doc. 22-1) at ¶ 4 (emphasis added). In other words, the plaintiff quotes only the general release language and fails to advise the court of the critical exception of the defendant's counterclaims. If this critical exception is to be disregarded (as the plaintiff wants to do), then the release provision applies to all claims of all parties, including the plaintiff's claim against the defendant, and this entire case should be dismissed.

### 5.  A Claim for Negligence has been Stated

Count 1 sets forth claims based on breach of contract and negligence. Section D of the defendant's Motion to Dismiss First Amended Counterclaim (Doc. 41) (entitled "Pauls Valley's claim for negligence fails to state a claim and must be dismissed") simply recites the elements of a negligence and then that there is a "complete absence" of any allegations supporting any of the elements of negligence . However, that is not the case.

There is clearly a contract between the parties, as urged by the evidenced by the Termination Agreement (Doc. 22-1), which references the earlier Master Services Agreement. *See* First Amended Counterclaim (Doc. 39), ¶ 1. As the Oklahoma Supreme Court has held:

> Accompanying every contract is a common law duty to perform the contract with care, skill, reasonable experience and faithfulness the thing agreed to be done. A negligent failure to perform these duties is a tort and a breach of contract. An action for breach of contract and an action in tort may arise from the same set of facts.

*Leak-Gilbert v. Fahle*, 2002 OK 66, ¶ 20, 55 P.3d 1054, 1059. Here, the Master Services Agreement is what creates the duty of the plaintiff to the defendant, as is clear from ¶ 1 of the First Amended Counterclaim (Doc. 39). Some of the specific duties which were owed to the defendant are set forth in ¶ 2 of the First Amended Counterclaim (Doc. 39). The breaches and the injuries are set forth in ¶¶ 3-4 of the First Amended Counterclaim (Doc. 39). Under *Leak-Gilbert*, the defendant has clearly stated a viable claim for negligence in Count 1.

### 6. A Claim for a Declaratory Judgment has been Stated

In Section E of its Motion to Dismiss First Amended Counterclaim (Doc. 41), the plaintiff argues that, because it "has no duty to release its security interest in the assets" of the defendant," there is no actual controversy. Motion to Dismiss First Amended Counterclaim (Doc. 41), ¶ 29 *If* the defendant agreed with that argument, then there would be no controversy giving rise to a declaratory-judgment claim. However, the exact opposite is present here: the defendant has counterclaimed for a determination that the plaintiff no longer has any security interest in the defendant's property because any such interest has been waived (First Amended Counterclaim (Doc. 39), Count 2), and the plaintiff controverts that by arguing that it "has no duty to release its security interest in the assets" of the defendant." Motion to Dismiss First Amended Counterclaim (Doc. 41), ¶ 29. The controversy is comprised of these polar opposite positions.

As noted in Footnote 1, defendant has filed a motion for partial summary judgment on Count 2. *See* Defendant's Motion for Partial Summary on Count 2 of the

First Amended Counterclaim (Doc. 42). Although the plaintiff's response time has not run for that motion, the plaintiff's response will certainly highlight the existence of a controversy (unless the plaintiff has a complete change of heart and includes in its response a file-stamped release of its lien).

### 7. The Cumulative Nature of Remedies does not Help the Plaintiff

Finally, the plaintiff argues that authorities that discuss the generally-cumulative nature of a creditor's remedies save the plaintiff from waiver of its security interest. That argument is rebutted in Section 1.B. of Defendant's Motion for Partial Summary Judgment on Count 2 of the First Amended Counterclaim (Doc. 42 at pp. 6-9), and that rebuttal is repeated below.

In its Motion to Dismiss First Amended Counterclaim (Doc. 41 at ¶¶ 30-34), the plaintiff essentially argues that *Farmers State Bank in Afton v. Ballew*, 1981 OK CIV APP 7, 626 P.2d 337, stands for the proposition that, despite any waiver of rights, a secured creditor can revive and enforce a waived right. However, *Farmers State Bank* did not so hold, nor did it involve any allegation of waiver; rather, it involved a creditor which vigorously pursued various remedies (*i.e.*, there was not even an argument of waiver), and that case correctly held that the creditor in that case was entitled to pursue multiple remedies. But since that case did not involve any allegation of waiver, it is inapplicable to this case.

Likewise, *O'Dell v. Kunkel's, Inc.*, 1978 OK 29, 581 P.2d 878, 880 (the only other Oklahoma case cited by the plaintiff on this issue) did not involve any allegation of

waiver; rather, it involved a creditor which was vigorously attempting to enforce its lien on fixtures, and it proceeded under Oklahoma's lien laws in Title 42 rather than Title 12 (the Oklahoma Uniform Commercial Code). The Oklahoma Supreme Court held that "The U.C.C. does not preclude a creditor in the proper factual circumstances from protecting his interest in goods in more than one way." *O'Dell*, 1978 OK 29 at ¶ 12, 581 P.2d 878, 881. But that holding does not help the plaintiff in this case because the plaintiff here has not attempted to protect its interest in the defendant's property in *more than one way*; in fact, what has occurred in this case is that, beginning with the filing of the First Amended Complaint (Doc. 22), the plaintiff in this case has attempted to protect its interest in the defendant's property in *no* way, and it knowingly gave up (waived) that right in order to remain in federal court.

The plaintiff's position that it can "have its cake and eat it, too" (*i.e.*, that it can abandon its security interests the defendant's collateral in order to stay in federal court and at the same time enforce its security interests in federal court) is type of position which has been consistently rejected by the Oklahoma appellate courts. For example, where a court had dissolved a partnership and ordered partnership assets sold, a partner (Bras) cashed a voucher for his share of the sale proceeds and then attempted to appeal the court's decision. The Oklahoma Supreme Court rejected his appeal:

> Bras needed only to appeal the trial court's actions to protect his interest. His act in cashing the voucher was voluntary and for his benefit. That act was not done in defense of and to protect his rights. As to the trial court's orders, Bras could do nothing more than object and appeal. As to the voucher, Bras could accept or refuse. This was his choice.

> Bras argues the language in the endorsement saves his appeal. We do not agree. He did two inconsistent acts. He accepted the fruits of the judgment, but also sought to repudiate the judgment. Bras would accept the benefits accruing to him under the judgment but would deny the rights flowing to his adversary under the judgment. He cannot "have his cake and eat it too." He cannot save his cake by protesting the flavor and at the same time eating it. This would not be fair or just.

*Bras v. Gibson*, 1974 OK 148 at ¶¶ 8 and 9, 529 P.2d 982, 983–84. *Accord, Adams v. Unterkircher*, 1985 OK 96 at ¶ 8, 714 P.2d 193, 196 (in which the Oklahoma Supreme Court characterized reaping the benefit of a waiver and then repudiating the waiver as "fatally inconsistent").

The foregoing language from *Bras* can be paraphrased thusly to fit the plaintiff's actions in this case:

> The plaintiff did two inconsistent acts. It accepted the fruits of abandoning its security interests (being allowed to remain in federal court), but also sought to repudiate the abandonment by attempting to enforce its abandoned security interests. The plaintiff would accept the benefits accruing to it under the abandonment but would deny the rights flowing to his adversary – the right to have the case dismissed for failure to join an indispensable party. The plaintiff cannot 'have its cake and eat it too.' It cannot save its cake by protesting the flavor and at the same time eating it. This would not be fair or just.

**Conclusion**

The plaintiff's motion to dismiss the counterclaim should be denied, and this case should proceed to the discovery phase. In the event that the Court determines that the plaintiff is entitled to more specificity as to any aspect of the counterclaim, the defendant requests that it be allowed a reasonable opportunity to conduct discovery in order to further amend its counterclaim to address any deficiencies identified by the Court. Leave

to amend "is to be freely given as justice so requires. F.R.C.P. 15(a). In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court emphasized that 'this mandate is to be heeded' absent, inter alia, futility or untimeliness." *Compton v. Wells Fargo Financial Acceptance Oklahoma, Inc.*, 2005 WL 1533000, at *1 (W.D.Okla. June 27, 2005) (Cauthron, J.).

          GARVIN AGEE CARLTON, P.C.

By: *[signature: Brett Agee]*
      Brett Agee, OBA # 12547
brett.agee@gaclawyers.com
P.O. Box 10
Pauls Valley, OK 73075-0010
405-238-1000
Fax: 405-238-1001
Attorney for Defendant

### Certificate of Service

    I hereby certify that on January 25, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

    James Vogt
    Tripp Scott
    Charles M. Tatelbaum
    Jerome S Sepkowitz

          *s/Brett Agee*
          s/Brett Agee